59 F.3d 181
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 David A. PEEK, Darrell J. Hjerpe and Gary T. Bingaman, Petitioners,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 94-3506.
 United States Court of Appeals, Federal Circuit.
 June 19, 1995.
 
 Before PLAGER, RADER, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 DECISION
 
 1
 Petitioners David A. Peek, Darrell J. Hjerpe, and Gary T. Bingaman ("petitioners") appeal from the June 30, 1994 opinion and order of the Merit Systems Protection Board ("Board") in Docket Nos. DA-0831-93-0263-A-1, -0271-A-1, and -0272-A-1. In its decision, the Board denied petitioners' motion for attorney fees pursuant to 5 U.S.C. Sec. 7701(g)(1) (1988).[1] We affirm.
 
 DISCUSSION
 A.
 
 2
 Petitioners are Airborne Detection Systems Specialists with the United States Customs Service ("Customs"). Their duties involve, in relevant part, the airborne surveillance of suspected drug traffickers over the southern border of the United States and along the Caribbean basin. In August 1989, petitioners submitted a claim to Customs for law enforcement retirement credit under 5 U.S.C. Sec. 8336(c)(1).[2] That statute provides for an annuity for "[a]n employee who is separated from the service after becoming 50 years of age and completing 20 years of service as a law enforcement officer." For purposes of the statute, a "law enforcement officer" is "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States." 5 U.S.C. Sec. 8331(20). The Office of Personnel Management ("OPM") has promulgated a regulation supplementing the statutory definition. The regulation states that the term "law enforcement officer" does not include "an employee whose primary duties involve maintaining law and order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than persons who are suspected or convicted of offenses against the criminal laws of the United States." 5 C.F.R. Sec. 831.902 (1995).[3]
 
 
 3
 Customs submitted petitioners' claims to OPM for a determination of whether petitioners were eligible for coverage as law enforcement officers under the statute. In November 1992, OPM determined that the positions occupied by petitioners were not entitled to coverage under the law enforcement retirement program. Thereafter, in February 1993, following a request for reconsideration, OPM affirmed its November 1992 decision. It did so after determining that the pertinent position descriptions did not include any of the duties listed at 5 U.S.C. Sec. 8331(20).[4] Although recognizing that petitioners perform duties augmenting and supporting the drug interdiction effort, OPM stated, with reference to petitioner Peek, for example, that there was no evidence in the agency's evaluation statement "that the incumbent of the position performs criminal investigations and apprehends or detains persons suspected or convicted of violations of Federal Criminal Laws."
 
 
 4
 Petitioners appealed OPM's reconsideration decisions to the Board. The administrative judge ("AJ") reversed OPM's decision. Based upon his factual findings regarding petitioners' jobs, he determined that petitioners were involved in performing criminal investigations and, to a lesser extent, apprehending criminals. The AJ concluded that this was sufficient to meet the definition of the term "law enforcement officer" in 5 U.S.C. Sec. 8331(20) and 5 C.F.R. Sec. 831.902. Accordingly, he held that petitioners were entitled to individual law enforcement retirement credit under the Civil Service Retirement System. OPM declined to file a petition for review with the Board. Consequently, petitioners were given service credit as law enforcement officers for the period from March 1989, through July 15, 1993.
 
 
 5
 In due course, petitioners filed a motion to recover the attorney fees they incurred in the Board proceedings, pursuant to 5 U.S.C. Sec. 7701(g)(1).[5] On December 30, 1993, over OPM's opposition , an AJ awarded petitioners attorney fees in the amount of $26,340.86. He did so after finding that petitioners had prevailed in their claims for law enforcement officer retirement credit, that an award of attorney fees was warranted in the interest of justice, and that, with certain modifications, the claimed amounts were reasonable. OPM petitioned for review of the AJ's decision. On June 30, 1994, the Board reversed the AJ's decision, holding that an award of attorney fees was not warranted in the interest of justice. This appeal followed.
 
 B.
 
 6
 We affirm a decision of the Board unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. Sec. 7703(c) (1991); Cheeseman v. Office of Personnel Management, 791 F.2d 138, 140 (Fed. Cir. 1986), cert. denied, 479 U.S. 1037 (1987). On appeal, petitioners bear the burden of establishing error in the Board's decision. Cheeseman, 791 F.2d at 140.
 
 
 7
 As noted, in order to establish entitlement to an award of attorney fees under Sec. 7701(g)(1), a petitioner must show that he or she prevailed in the Board proceedings, that an award of attorney fees is warranted in the interest of justice, and that the amount of fees claimed is reasonable. OPM agrees that petitioners were prevailing parties before the Board on their claim for law enforcement retirement credit. In addition, OPM does not dispute the reasonableness of the amount of the AJ's fee award. The sole issue in the case, therefore, is whether an award of attorney fees was warranted in the interest of justice.
 
 
 8
 We have stated that the Board "is given great discretion under section 7701(g)(1) in awarding attorney's fees" and that consequently we "will accord the [B]oard's determination great deference." Sterner v. Department of the Army, 711 F.2d 1563, 1568 (Fed. Cir. 1983) (footnote omitted). In Allen v. United States Postal Service, 2 M.S.P.R. 420 (1980), the Board established five circumstances under which an award of attorney fees is appropriate in the interest of justice:
 
 
 9
 1. Where the agency engaged in a "prohibited personnel practice";
 
 
 10
 2. Where the agency's action was "clearly without merit" or was "wholly unfounded," or the employee is "substantially innocent" of the charges brought by the agency;
 
 
 11
 3. Where the agency initiated the action against the employee in "bad faith" ...;
 
 
 12
 4. Where the agency committed a "gross procedural error" which "prolonged the proceeding" or "severely prejudiced" the employee; [and]
 
 
 13
 5. Where the agency "knew or should have known that it would not prevail on the merits" when it brought the proceeding.
 
 Id. at 434-35 (citations omitted).[6]
 
 14
 As they did before the AJ and the Board, petitioners argue that they are entitled to recover their attorney fees based upon Allen factors 2 and 5, the only two categories relevant to retirement appeals. Fleming v. Office of Personnel Management, 62 M.S.P.R. 37, 40 (1994). The Board found that the record indicated that, in denying petitioners' claim for law enforcement retirement credit, OPM had relied in part upon petitioners' "lack of direct contact with criminals or suspected criminals, an important factor in the Board's own law enforcement analysis." The Board noted that its precedent regarding the definition of "law enforcement officer" in section 8331(20) had interpreted the term "investigation" as meaning "criminal investigation," and, in turn, had defined criminal investigations as involving "frequent contacts with criminals and suspected criminals."
 
 
 15
 The precedent to which the Board was referring was its decision in Hobbs v. Office of Personnel Management, 58 M.S.P.R. 628 (1993), decided after the AJ's decision in this case. In that case, a special inspector with the Bureau of Alcohol, Tobacco, and Firearms sought law enforcement officer retirement credit. Hobb's eligibility for the credit hinged upon whether he conducted investigations as required by the statute. The Board interpreted "investigation" in the statute as meaning "criminal investigation." Id. at 633. The Board continued: "Criminal investigations, as distinguished from other types of investigations, involve unusual physical hazards for the investigator, deriving from frequent contacts with criminals and suspected criminals." Id. The Board sustained OPM's denial of Hobbs's application for law enforcement retirement credit in large part on the ground that his position did not involve frequent contacts with criminals or suspected criminals. Id. at 633 n.5.
 
 
 16
 The Hobbs rubric, which makes contact with suspected or known criminals a critical factor in determining eligibility for law enforcement officer retirement credit, was the standard used by OPM when it denied petitioners' claims, even though Hobbs was decided after OPM's reconsideration decision. See also Sauser v. Office of Personnel Management, 59 M.S.P.R. 489, 492 (1993). Because OPM's denial of law enforcement status to petitioners was consistent with Board law regarding law officer retirement credit, as stated shortly thereafter in Hobbs, OPM's denial of petitioners' claims was not "clearly without merit" or "wholly unfounded" (Allen factor 2). For the same reason, we do not believe it could fairly be said that OPM "knew or should have known that it would not prevail on the merits" (Allen factor 5). Put another way, we do not see how the position of OPM can be "wholly unfounded" when that position is consistent with case law of the Board that has not been overruled by this court.[7] The Board did not abuse its discretion in determining that an award of attorney fees to petitioners would not be in the interest of justice.
 
 
 17
 For the foregoing reasons, the decision of the Board denying petitioners' motion for attorney fees under 5 U.S.C. Sec. 7701(g) is affirmed.
 
 
 18
 Each side shall bear its own costs.
 
 
 
 [1]
 All references are to the 1988 edition of the United States Code. The statutory provisions at issue in this case are the same in both the 1988 and 1994 editions of the Code
 
 
 [2]
 This claim was submitted on behalf of all Airborne Detection Systems Specialists and Flight Engineers employed by Customs at its Surveillance Support Center in Corpus Christi, Texas, and the Customs National Aviation Center in Oklahoma City, Oklahoma
 
 
 [3]
 During the period of time relevant to this case, the wording of the regulation was identical
 
 
 [4]
 OPM's reconsideration decision refers to "duties described in 5 U.S.C. Sec. 8336(c)." We assume, however, that OPM meant to refer to 5 U.S.C. Sec. 8331(20) because that is the statutory provision listing the duties that qualify an employee as a "law enforcement officer."
 
 
 [5]
 Section 7701(g)(1) provides, in pertinent part, that "the Board ... or an administrative law judge ... may require payment by the agency ... of reasonable attorney fees incurred by an employee ... if the employee ... is the prevailing party and the Board [or] administrative law judge ... determines that payment by the agency is warranted in the interest of justice."
 
 
 [6]
 The Federal Circuit has endorsed the Allen formulation. Sterner, 711 F.2d at 1570
 
 
 [7]
 Petitioners contend that Hobbs was incorrectly decided because, in that case, the Board "impermissibly engraft[ed] the 'frequent direct contact' test for 'detention' duties to the concepts of criminal 'investigation' or 'apprehension."' The merits of Hobbs are not before us, however. What is important as far as petitioners' claim for attorney fees is concerned is that OPM's position on petitioners' claims was consistent with Hobbs and that Hobbs is Board law, which is binding on OPM